IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SCOTT LOWELL CHURCH,<br><br>    Defendant. | No. 1:19-cr-00052-RGE-HCA<br><br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION TO<br>DISMISS INDICTMENT** |

## I.    INTRODUCTION

Defendant Scott Lowell Church was indicted on one count of failure to register as a sex offender. Redacted Indictment, ECF No. 2. He now moves to dismiss the indictment, arguing his duty to register expired prior to the events alleged in the indictment. Def.'s Mot. Dismiss Indictment, ECF No. 23. For the reasons set forth below, the Court grants Church's motion to dismiss.

## II.    BACKGROUND

The Court takes the allegations in the indictment as true for the purpose of considering Church's motion to dismiss. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952). The following facts are either alleged in the indictment or submitted in the parties' briefing. *See* Def.'s Br. Supp. Mot. Dismiss Indictment 1–2, ECF No. 23-1; Gov't's Resist. Def.'s Mot. Dismiss Indictment 1–2, ECF No. 34.

On June 22, 2001, Church was charged with first-degree sexual assault under Nebraska law. ECF No. 23-1 at 2. The information alleged that Church "did subject another person to sexual penetration without consent of the victim; knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct." *Id.*; Def.'s Ex. A

Supp. Mot. Dismiss Indictment 2, ECF No. 23-2.[1] Church pleaded no contest to the charge. ECF No. 23-1 at 2; ECF No. 23-2 at 6. He entered his plea to an amended version of the indictment with handwritten modifications indicating the crime was an attempt[2] and that it caused serious personal injury to the victim.[3] ECF No. 23-1 at 2; ECF No. 23-2 at 5; *see* Def.'s Ex. B Supp. Mot. Dismiss Indictment, ECF No. 23-3. Church was sentenced to 15 to 30 months of imprisonment. ECF No. 23-1 at 2; ECF No. 23-2 at 7. He was released from prison on September 4, 2003. ECF No. 23-1 at 2; Def.'s Ex. C Supp. Mot. Dismiss Indictment, ECF No. 23-4.

On September 25, 2019—roughly sixteen years after his release from prison—Church was indicted in the Southern District of Iowa on one count of failure to register as a sex offender. ECF No. 2. The indictment alleges Church was required to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20911 *et seq. Id.* It further

---

[1] In response to Church's motion to dismiss, the Government asserts, without citation, that "Defendant was accused of victimizing a mentally disabled twenty-year-old by fondling her genitals, forcing her to perform oral sex on the Defendant, and penetrating her vagina with his penis." ECF No. 34 at 1; *see also* Gov't's Sur-Reply Def.'s Mot. Dismiss Indictment 2–3, ECF No. 36. As discussed below, the categorical approach—not the modified categorical approach—applies in this case. Thus, the Court cannot consider the facts of Church's prior conviction, no matter how aggravating. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). Even if the modified categorical approach applied, the facts underlying Church's conviction could only be considered by the Court if they originated from a "limited class of documents." *See id.* at 2249; *cf. United States v. Hill*, 820 F.3d 1003, 1005 (8th Cir. 2016) (observing that a court applying the distinct circumstance-specific approach may look to "reliable evidence" of the circumstances giving rise to the defendant's conviction). The Government's factual assertions are not tethered to any such documents.

[2] The first handwritten modification provides Church "[did] intentionally engage in conduct which would constitute the crime if the attendant circumstances were as he believed, to wit: attempt." ECF No. 23-2 at 5. This language quotes nearly verbatim one of the subsections of Nebraska's criminal attempt statute. *See* Neb. Rev. Stat. § 28-201(1)(a).

[3] Nebraska's first-degree sexual assault statute provides: "The sentencing judge shall consider whether the actor caused serious personal injury to the victim in reaching a decision on the sentence." Neb. Rev. Stat. § 28-319(2). Serious personal injury is a sentencing consideration, not an element of the crime. *State v. Freeman*, 677 N.W.2d 164, 175 (Neb. 2004).

alleges that, as early as April 2019 and continuing to on or about September 2019, Church traveled in interstate commerce from Idaho to Iowa after failing to register. *Id.*

Church now moves to dismiss the indictment. ECF No. 23; *see also* Def.'s Reply Br. Supp. Mot. Dismiss Indictment, ECF No. 35. The Government resists. ECF No. 34; *see also* Gov't's Sur-Reply Def.'s Mot. Dismiss Indictment, ECF No. 36.

## III.   LEGAL STANDARD

A criminal indictment must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "[A]n indictment must allege that the defendant performed acts which, if proven, constitute the violation of law for which he is charged. If the acts alleged in the indictment do not constitute a violation of law, the indictment is properly dismissed." *United States v. Polychron*, 841 F.2d 833, 834 (8th Cir. 1988). A criminal defendant may move to dismiss an indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). Generally, an indictment is insufficient only if it omits an essential element of the offense. *United States v. Hance*, 501 F.3d 900, 906 (8th Cir. 2007).

Ordinarily, a court does not look beyond the four corners of the indictment when judging its sufficiency. *See United States v. Farm & Home Sav. Ass'n*, 932 F.2d 1256, 1259 n.3 (8th Cir. 1991). But here, both parties invite the court to consider facts outside the indictment. *See* ECF No. 23-1 at 2–3; ECF No. 34 at 1–2. Although the parties do not address the issue, other courts considering the sufficiency of SORNA-based indictments have reasoned that looking to extrinsic evidence is permissible when the material facts are undisputed and the challenge presents a pure question of law. *United States v. Grant*, No. 1:17-CR-236-AT-AJB, 2018 WL 4516008, at *2 (N.D. Ga. July 4, 2018), *report and recommendation adopted*, No. 1:17-CR-0236-AT, 2018 WL 4140870 (N.D. Ga. Aug. 30, 2018) (addressing whether a defendant had a duty to register under SORNA in a pretrial motion to dismiss the indictment because it was a pure legal question based

on undisputed facts); *United States v. Marrowbone*, No. 3:14–CR–30071–RAL, 2014 WL 6694781, at *2 (D.S.D. Nov. 26, 2014) (same); *cf. United States v. Brown*, No. 11–174, 2012 WL 604185, at *4 (W.D. Pa. Feb. 24, 2012) (denying a defendant's motion to dismiss an indictment because the sufficiency of the indictment turned on "factual questions [that] cannot be addressed in the context of a motion to dismiss the indictment"). The Eighth Circuit has not addressed this issue.

The Court finds the reasoning of other district courts persuasive, and concludes that looking past the four corners of the indictment is proper here. As the district court noted in *Grant*, the Federal Rules of Criminal Procedure provide that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." 2018 WL 4516008, at *1 (alteration in original) (quoting Fed. R. Crim. P. 12(b)(1)). Consistent with this rule, Church may raise his challenge to the indictment at this stage because it presents a pure question of law, based on undisputed facts, and thus it can be resolved without a trial on the merits. As the court noted in *Marrowbone*, "if [the defendant's] claim is valid, it would be unfair to [the defendant] and a waste of judicial resources to begin a trial on an indictment that would be dismissed on a legal issue." 2014 WL 6694781, at *2. Therefore, the Court will accept the parties' invitation to look outside the indictment in ruling on Church's motion to dismiss.

## IV.   DISCUSSION

Church argues the indictment is legally insufficient because his duty to register as a sex offender expired before his alleged failure to register. ECF No. 23-1 at 3–10.[4] The Government argues Church had a duty to register at the time of the events alleged in the indictment, and he

---

[4] Church argues in the alternative that SORNA is unconstitutional as applied to individuals with convictions that preceded its 2006 enactment. ECF No. 23-1 at 10–11. Church raises this argument for preservation purposes only; he concedes that Supreme Court precedent forecloses this Court from ruling in his favor on this basis. *Id.* at 11; ECF No. 35 ¶ 9.

failed to do so. ECF No. 34 at 2. The parties' dispute stems from their disagreement about Church's sex offender classification under SORNA.

SORNA requires sex offenders to register, and to keep their registrations current, in the jurisdictions where they reside, work, and attend school. 34 U.S.C. § 20913(a). The length of a sex offender's duty to register depends on his or her tier classification. *See id.* § 20915(a). Tier III offenders—the "most egregious" category—must register for life. *United States v. Mulverhill*, 833 F.3d 925, 928 (8th Cir. 2016) (internal quotation marks omitted) (quoting *United States v. Morales*, 801 F.3d 1, 3 (1st Cir. 2015)); 34 U.S.C. § 20913(a)(3). Tier II offenders must register for twenty-five years. 34 U.S.C. § 20913(a)(2). And tier I offenders must register for fifteen years. *Id.* at § 20913(a)(1).

SORNA defines the tiers in part by reference to other federal statutes. A tier III sex offender is one whose offense of conviction is a felony that is (A) "comparable to or more severe than" (i) aggravated sexual abuse or sexual abuse as defined in 18 U.S.C. §§ 2241 and 2242, respectively, or (ii) abusive sexual contact as defined in 18 U.S.C. § 2244 against a minor under the age of thirteen; (B) involves kidnapping a minor; or (C) occurs when the offender is already a tier II offender. 34 U.S.C. § 20911(4). Tier II comprises sex offenders with certain prior felony convictions against minors and those who commit felonies while tier I offenders. *Id.* § 20911(3). Tier I is a catchall for sex offenders who do not qualify as tier II or tier III offenders. *Id.* § 20911(2).

Church contends he is a tier I offender, meaning his duty to register lasted only 15 years and expired in September 2018—several months before the events alleged in the indictment. ECF No. 23-1 at 3–10; *see* ECF No. 2. The Government argues Church is a tier III offender who must register for life. ECF No. 34 at 3–6. Relying on subsection (A)(i) of the tier III definition, the Government argues that Church's conviction for first-degree sexual assault in Nebraska is comparable to or more severe than aggravated sexual abuse or sexual abuse as defined in 18 U.S.C.

§§ 2241 and 2242. *Id.*; *see* 34 U.S.C. § 20911(4)(A)(i). Church does not dispute that he is a sex offender under SORNA, and neither party argues Church is a tier II offender. Therefore, the sufficiency of the indictment turns on whether Church's Nebraska conviction is comparable to or more severe than the federal crimes of aggravated sexual abuse or sexual abuse, as they are defined in 18 U.S.C. §§ 2241 and 2242.

Federal courts generally use one of two analytical approaches when comparing prior convictions with the generic or federal offenses listed in statutes requiring a predicate offense, like SORNA. *United States v. Berry*, 814 F.3d 192, 195 (4th Cir. 2016); *see Nijhawan v. Holder*, 557 U.S. 29, 34 (2009). One is the "categorical approach," which compares the "elements" of a prior offense with the elements of the listed offense. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016); *see also Taylor v. United States*, 495 U.S. 575, 602 (1990) (holding a state burglary conviction qualifies as "burglary" under the Armed Career Criminal Act if its statutory elements match the generic offense of burglary). This approach disregards the facts, or "means," of a prior conviction and focuses on the elements of the crimes at issue. *Mathis*, 136 S. Ct. 2248. Only if the elements of the prior offense are the same as, or narrower than, the elements of the listed offense, does the prior offense qualify as the listed offense. *Id.* The other approach, called "circumstance-specific," requires a court to consider the facts behind the offense of conviction and ask if the offense, as committed, satisfies the elements of the listed offense. *See Nijhawan*, 557 U.S. at 40 (holding that whether a prior fraud or deceit offense involves loss in excess of $10,000 to the victim and thus qualifies as an aggravated felony triggering deportation under the Immigration and Nationality Act depends on the specific circumstances of the offense).

Neither the Supreme Court nor the Eighth Circuit has decided which approach applies when comparing prior sex offenses with the federal offenses listed in 34 U.S.C. § 20911(4)(A)(i). *See Mulverhill*, 833 F.3d at 929–30. Notably, the Eighth Circuit has held courts should apply the

circumstance-specific approach to decide whether a prior offense involves "conduct that by its nature is a sex offense against a minor," under a separate provision of SORNA. *United States v. Hill*, 820 F.3d 1003, 1005 (8th Cir. 2016) (quoting 34 U.S.C. 20911(7)(I)). But, as the Eighth Circuit has since emphasized, *Hill* did not resolve which approach governs the provisions of SORNA applicable here. *Mulverhill*, 833 F.3d at 929–30; *see United States v. Hall*, 772 F. App'x 375, 375 (8th Cir. 2019) (unpublished) (suggesting the categorical approach applies without deciding the issue); *see also Nijhawan*, 557 U.S. at 37–38 (observing that different provisions of the same statute may call for different approaches).

Relying on an apparent consensus among circuits that have decided the issue—all of whom have held the categorical approach applies in this context—both parties ask the Court to apply the categorical approach. ECF No. 23 at 5; ECF No. 34 at 3; ECF No. 35 ¶ 1; *see United States v. Barcus*, 892 F.3d 228, 231–32 (6th Cir. 2018); *United States v. Young*, 872 F.3d 742, 746 (5th Cir. 2017); *Berry*, 814 F.3d at 197; *United States v. White*, 782 F.3d 1118, 1135 (10th Cir. 2015); *Morales*, 801 F.3d at 6; *United States v. Cabrera-Gutierrez*, 756 F.3d 1125, 1133 (9th Cir. 2014); *United States v. Taylor*, 644 F.3d 573, 576–77 (7th Cir. 2011). Given the parties' agreement and the weight of authority outside the Eighth Circuit, the Court will apply the categorical approach.

To apply the categorical approach, the Court must compare the elements of Church's offense of conviction—first-degree sexual assault under Nebraska law—to the federal crimes listed in 34 U.S.C. § 20911(4)(A)(i). Ordinarily, the elements of the offense of conviction must be the same as, or narrower than, those of the federally defined offense. *Mathis*, 136 S. Ct. 2248. But SORNA's tier III provisions—unlike other statutory provisions which require the categorical approach—use the word "comparable." 34 U.S.C. § 20911(4)(A); *cf. Taylor*, 495 U.S. at 600–02. As other courts have noted, the word "comparable" implies the offense of conviction need not be "identical" to a federal offense listed in § 20911(4)(A). *United States v. Coleman*, 681 F. App'x

413, 416 (5th Cir. 2017) (unpublished). Instead, crimes may be comparable even if the elements of the offense of conviction are "slightly broader" than those of the listed offense. *Id.* (internal quotation marks omitted) (quoting *United States v. Forster*, 549 F. App'x 757, 769 (10th Cir. 2013) (unpublished)); *see Morales*, 801 F.3d at 7 (noting the word "comparable" may allow for "some flexibility in examining the offenses").

To identify the elements of each crime, the Court begins with the statutory definitions. Looking first to the federal offenses listed in 34 U.S.C. § 20911(4)(A)(i), there are two methods of committing the offense of aggravated sexual abuse under 18 U.S.C. § 2241: First, a person who "knowingly causes another person to engage in a sexual act—(1) by using force against that other person; or—(2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping" commits aggravated sexual abuse. 18 U.S.C. § 2241(a). Second, a person who "knowingly . . . renders another person unconscious and thereby engages in a sexual act with that other person" or "administers to another person by force or threat of force, or without the knowledge or permission of that person, a drug, intoxicant, or other similar substance," and as a result "substantially impairs the ability of that other person to appraise or control conduct" and then "engages in a sexual act with that other person" commits aggravated sexual abuse. *Id.* § 2241(b).

As for sexual abuse under 18 U.S.C. § 2242, a person commits this offense if he or she "knowingly . . . (1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping)" or "(2) engages in a sexual act with another person if that other person is . . . (A) incapable of appraising the nature of the conduct . . . or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." 18 U.S.C. § 2242.

8

With these definitions in mind, the Court turns to Church's offense of conviction. Church was convicted of first-degree sexual assault under Nebraska law. At the time of his conviction, Nebraska's first-degree sexual assault statute provided in relevant part:

> (1) Any person who subjects another person to sexual penetration (a) without consent of the victim, or (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or (c) when the actor is nineteen years of age or older and the victim is less than sixteen years of age is guilty of sexual assault in the first degree.

Neb. Rev. Stat. § 28-319(1) (Reissue 1995).[5]  The term "without consent" was defined as:

> (a)(i) The victim was compelled to submit due to the use of force or threat of force or coercion, or (ii) the victim expressed a lack of consent through words, or (iii) the victim expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor;
>
> (b) The victim need only resist, either verbally or physically, so as to make the victim's refusal to consent genuine and real and so as to reasonably make known to the actor the victim's refusal to consent; and
>
> (c) A victim need not resist verbally or physically where it would be useless or futile to do so.

Neb. Rev. Stat. § 28-318(8) (Reissue 1995).

The parties disagree on the elements of Nebraska's first-degree sexual assault statute. Church argues the statute has only one set of elements, making it "indivisible." ECF No. 23-1 at 7–9. The Government argues the statute has alternative elements—only some of which apply

---

[5] Nebraska's first-degree sexual assault statute was amended in 2006. *See* L.B. 1199, 99th Leg., 2d Sess. (Neb. 2006). The only substantive change to the portion quoted above added that a victim under subsection (c) must be at least twelve years old. *See id.* Otherwise, the version of § 28-319 that Church was charged and convicted under mirrors the present version of the statute, including the definition of "without consent" in § 28-318(8). *See id.* Because the pre- and post-2006 versions of the statute are materially identical for present purposes, the Court generally cites to the current version of the Nebraska statute in this order.

here—making it "divisible." ECF No. 36 at 1–2.[6] Additionally, the parties disagree on how the elements of the Nebraska statute compare with the federal crimes listed in 34 U.S.C. § 20911(4)(A)(i). Church argues the elements of the Nebraska statute are broader than those of aggravated sexual abuse and sexual abuse under 18 U.S.C. §§ 2241 and 2242. ECF No. 23 at 6–7, 9–10; ECF No. 35 ¶¶ 5–7. The Government contends the Nebraska statute covers the same ground as both aggravated sexual abuse and sexual abuse, making it comparable to both statutes. ECF No. 34 at 5–6; ECF No. 36 at 3–4.

For the reasons discussed below, the Court concludes Nebraska's first-degree sexual assault statute has only one set of elements, meaning it is indivisible. Comparing these statutory elements to the elements of aggravated sexual abuse and sexual abuse under 18 U.S.C. §§ 2241 and 2242, the Court further concludes that Nebraska's statute reaches a considerably larger range of conduct than both federal statutes. Because Nebraska's first-degree sexual assault statute is not comparable or more severe than either of the crimes listed in 34 U.S.C. § 20911(4)(A)(i), Church is a tier I offender whose duty to register under SORNA had expired at the time of the events alleged in the indictment.

### A.    Nebraska's First-Degree Sexual Assault Statute Is Indivisible.

Church argues the Nebraska statute has two elements: 1) sexual penetration, and 2) lack of valid consent. ECF No. 23-1 at 8. He argues that subsections (a), (b), and (c) are alternative means of satisfying the second element. *Id.* The Government disagrees, arguing that subsections (a), (b), and (c) create three different crimes. ECF No. 36 at 1–2.

---

[6] In its response to Church's motion to dismiss, the Government argued the Nebraska statute was indivisible. ECF No. 34 at 3–5. The Government clarified its position in its sur-reply, arguing subsections (a), (b), and (c) are alternative elements, each of which defines a separate crime. ECF No. 36 at 1–2. The Government does not dispute that subsection (a)—which defines "without consent" in four alternative ways—is indivisible. *Id.*; *see* Neb. Rev. Stat. § 28-319(1)(a); Neb. Rev. Stat. § 28-318(8).

Nebraska's first-degree sexual assault statute is "alternatively phrased," meaning it lists multiple items disjunctively. *Mathis*, 136 S. Ct. at 2256. When faced with an alternatively phrased statute, a court's first task is "to determine whether its listed items are elements or means." *Id.* "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Id.* at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)). At trial, a crime's elements are what a jury must find beyond a reasonable doubt to convict a defendant. *Id.* At a plea hearing, the elements are what a defendant must admit to when he or she pleads guilty. *Id.* "[M]eans," by contrast, are the factual methods of committing an element of an offense. *See id.* at 2248–49. They have no legal effect or consequence under the categorical approach. *Id.* at 2248.

A statute that lists alternative elements is "divisible." *Id.* at 2249. If a statute is divisible, a court must "review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with the others) with those of the generic crime." *Id.* at 2256. This is known as the "modified categorical approach." *Id.* at 2249.

A statute that lists alternative means is "indivisible." *Id.* at 2248–49. If a statute is indivisible, a court ignores the facts of the prior conviction and inquires "only whether the elements of the state crime and the generic offense make the requisite match." *Id.* at 2256 (emphasis omitted).

There are a few ways to tell whether a statute is divisible. First, a state court decision might answer the question. *Id.* In *Mathis*, for example, Iowa's burglary statute was indivisible because an Iowa Supreme Court case described the alternative components—the types of premises to which the statute applied—as "'alternative method[s]' of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle." *Id.* (alteration in

original) (quoting *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)). Second, the statute itself might resolve the issue. *Id.* For example, if the statutory alternatives correspond to different penalties, they are elements. *Id.* Third, if state law does not answer the question, a federal court may "peek" at the record of the prior conviction for the "limited purpose of determining whether the listed items are elements of the offense." *Id.* at 2256–57 (alterations omitted) (internal quotation marks and citation omitted). If, for example, an indictment and the corresponding jury instructions list each statutory alternative, "[t]hat is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.* at 2257. Conversely, where these documents reference only one statutory alternative, the alternatives are elements. *Id.*

Here, Nebraska's statute is indivisible. To begin, the Nebraska Supreme Court provides guidance. In *State v. McCurdy*, the Nebraska Supreme Court described the elements of § 28-319 as follows: "To prove guilt under § 28-319, it must be shown that the offender subjected the victim to sexual penetration along with one of the three alternatives set forth in § 28-319(1)(a), (b), and (c)." 918 N.W.2d 292, 299 (Neb. 2018). This description suggests that the alternative items listed in the Nebraska statute are not elements the prosecution must prove, but rather alternative means of satisfying a single element, which Church aptly calls "lack of valid consent." ECF No. 23-1 at 8. The Nebraska Supreme Court's analysis in *McCurdy* confirms this interpretation. The prosecutor had charged the defendant under subsections (a) and (b) of § 28-319(1), and the judge had instructed the jury on both alternatives. 918 N.W.2d at 299. The defendant appealed the sufficiency of the evidence, and the Nebraska Supreme Court held the defendant's conviction should be affirmed so long as the evidence supported a conviction under either subsection (a) or subsection (b). *Id.* at 300.

The other *Mathis* factors compel the same conclusion. Subsections (a), (b), and (c) carry the same penalties, which suggests they are alternative means of committing a singular offense and do not define separate crimes. *See Mathis*, 136 S. Ct. at 2256; Neb. Rev. Stat. § 28-319. And the record of Church's prior conviction demonstrates that subsections (a), (b), and (c) are alternative means of satisfying a single element. As in *McCurdy*, both the original information and the amended information to which Church pleaded guilty list subsections (a) and (b), rather than specifying which one Church violated. ECF No. 23-2 at 2, 5; *McCurdy*, 918 N.W.2d at 299. Listing out the statutory alternatives in this manner "is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.* at 2257.

The Government disputes that § 28-319 is indivisible. Relying on *State v. Rossbach*, it argues that Nebraska's first-degree sexual assault statute lists three separate crimes: a) sexual penetration done without the consent of the victim; b) sexual penetration with a mentally or physically incapacitated victim; and c) sexual penetration by a nineteen-year-old where the victim is between twelve and sixteen years old. ECF No. 36 at 1–2 (citing 650 N.W.2d 242, 249–50 (Neb. 2002)).

*Rossbach* does not support the Government's argument. *Rossbach* held a victim's lack of consent is not an element of first-degree sexual assault when the victim is incapable of resisting or appraising the nature of his or her conduct. 650 N.W.2d at 250. That holding clarifies the meaning of subsection (b)—not whether subsections (a), (b), and (c) are elements or means. Elsewhere in the opinion, the court states: "There are three distinct ways in which a perpetrator can commit the offense of first degree sexual assault under § 28–319(1)." *Id.* at 249. In other words, first-degree sexual assault is a singular crime that may be committed in alternative ways, rather than three separate crimes with distinct elements. The *Rossbach* holding is limited: a defendant may be

convicted under subsection (b) even if the prosecution does not prove lack of consent. *See id.* at 250. This holding does not preclude a prosecutor from charging multiple subsections in the alternative—as happened in Church's case and in *McCurdy*. Thus, a prosecutor does not have to prove any one subsection beyond a reasonable doubt. *See* ECF No. 23-2 at 2, 5; *McCurdy*, 918 N.W.2d at 299.

Putting *Rossbach* aside, there is also a more fundamental problem with the Government's argument that the Nebraska statute is divisible. Even assuming the statute is divisible, the Government has not explained how the Court should—or even could—apply the modified categorical approach to identify its elements. When a statute is divisible, the court must review a limited class of record materials to identify the specific elements—from among the statutory alternatives—upon which the defendant's conviction rests. *Mathis*, 136 S. Ct. at 2249. For a plea-based conviction, these materials are "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). Here, the only *Shepard* documents in the record are the charging information and the amended information to which Church pleaded guilty. ECF No. 23-2 at 2, 5. Both documents list the alternative subsections (a) and (b) of Nebraska's statute. As such, even if the statute were divisible, the Court would have no basis for narrowing down the elements applicable to Church's conviction, beyond the elimination of subsection (c). And with no record materials to clarify the applicable subsections, two statutes cannot be considered comparable under the modified categorical approach. *See United States v. Montanez–Trejo*, 708 F. App'x 161, 168 (5th Cir. 2017) (unpublished) (holding the defendant's conviction for first-degree sexual assault under Neb. Rev. Stat. § 28-319 "does not qualify under the generic offense of sexual abuse of a minor given that the lone *Shepard*-approved document in

the record does not clarify the subsection under which he was convicted" and declining to determine the divisibility of the statute).

First-degree sexual assault in Nebraska has two elements: 1) sexual penetration, and 2) lack of valid consent.[7] Subsections (a), (b), and (c) list alternative means of satisfying the second element. Because neither party disputes that Nebraska's definition of "sexual penetration" is comparable to the term "sexual act" in §§ 2241 and 2242, the only dispute is whether the second element of Nebraska's statute—lack of valid consent—criminalizes conduct that §§ 2241 and 2242 do not reach.

**B.   Nebraska's First-Degree Sexual Assault Statute Is Not Comparable to or More Severe Than the Federal Crimes of Aggravated Sexual Abuse or Sexual Abuse.**

The parties primarily dispute how Nebraska's first-degree sexual assault statute compares with sexual abuse under § 2242, and only briefly discuss how it compares with aggravated sexual abuse under § 2241. The Court separately compares the Nebraska statute with these federal offenses.

**1.   The Nebraska statute is not comparable to sexual abuse under 18 U.S.C. § 2242.**

Church offers two reasons why Nebraska's first-degree sexual assault statute is not comparable to the federal crime of sexual abuse, as defined in 18 U.S.C. § 2242. ECF No. 23-1 at 6–7. First, he points to subsection (iv) of Nebraska's "without consent" definition, under which a

---

[7] As noted above, Church pleaded guilty to attempted first-degree sexual assault. *See* ECF No. 23-2 at 5. Both SORNA and the federal statutes defining aggravated sexual abuse and sexual abuse include attempt in their definitions. 34 U.S.C. § 20911(4)(A)(i); 18 U.S.C. §§ 2241, 2242. The parties do not discuss the elements of attempt when comparing Church's offense of conviction with the crimes listed in 34 U.S.C. § 20911(4)(A)(i). Because the elements of Church's offense of conviction are not comparable to either §§ 2241 or 2242 without regard to the additional elements of attempt, the Court need not compare the elements of attempt under Nebraska law and federal law. More generally, and for the same reason, the Court does not consider whether there are differences or similarities between the statutes beyond those the parties identify.

person acts "without consent" if he or she obtains consent through deception. ECF No. 23-1 at 6;
Neb. Rev. Stat. § 28-318(8)(iv). He argues the same conduct—sexually penetrating a person after
obtaining that person's consent through deception—would not violate 18 U.S.C. § 2242. ECF No.
23-1 at 6. Second, and more broadly, Church argues that Nebraska's statute covers more conduct
than § 2242 because it generally prohibits nonconsensual sexual penetration, whereas § 2242
proscribes only discrete categories of nonconsensual sex involving threats, fear, or victim
incapacitation. ECF No. 35 ¶ 6.

In response, the Government argues the conduct covered by § 2242—engaging in a sexual
act with a person who is physically or mentally incapacitated, or inducing a person to engage in a
sexual act through threats or fear—is a "clear match" with Nebraska's "without consent"
definition. ECF No. 34 at 6. Responding to Church's argument about deception-based consent, the
Government contends that § 2242 forbids sexually penetrating a person after obtaining that
person's consent through deception because it prohibits engaging in a sexual act with someone
who is "incapable of appraising the nature of the conduct." *Id.*; ECF No. 36 at 3–4. Finally, the
Government asserts that, even if there is a slight variation between the statutes, they are still
"comparable," which is all that SORNA requires. ECF No. 34 at 6; ECF No. 36 at 4.

As some courts have observed, the text of § 2242 does not include a general prohibition on
nonconsensual sex. *See, e.g., United States v. James*, 810 F.3d 674, 679 (9th Cir. 2016)
("Noticeably absent from 18 U.S.C. § 2242 is a provision punishing non-consensual intercourse.").
Instead, it proscribes three discrete categories of inherently nonconsensual sexual acts: (1) sexual
acts accomplished through making threats or instilling fear in the victim, where such threats or
fear do not involve death, serious bodily injury, or kidnapping; (2)(A) sexual acts with persons
who are "incapable of appraising the nature of the conduct"; and (2)(B) sexual acts with persons

who are "physically incapable of declining participation in, or communicating unwillingness in, that sexual act." 18 U.S.C. § 2242.

Some provisions of Nebraska's first-degree sexual assault statute appear comparable to § 2242. For example, subsection (b) of the Nebraska statute—which prohibits knowingly engaging in sexual penetration with a victim who is "mentally or physically incapable of resisting or appraising the nature of his or her conduct"—tracks subsection (2) of § 2242, which prohibits sexual acts with incapacitated persons. *Compare* Neb. Rev. Stat. § 28-319(1)(b), *with* 18 U.S.C. § 2242(2); *see United States v. Bruguier*, 735 F.3d 754, 760 (8th Cir. 2013) (en banc) (referring to § 2242(2) as "the victim-incapacity element of the offense"). Similarly, Nebraska's prohibition on sexual penetration accomplished without consent through force, threat of force, or coercion mirrors subsection (1) of § 2242, which proscribes sexual acts accomplished through threats or fear. *Compare* Neb. Rev. Stat. § 28-319(1)(a), *and* Neb. Rev. Stat. § 28-318(8)(a)(i), *with* 18 U.S.C. § 2242(1).

But other provisions of the Nebraska statute have no apparent analogue in § 2242. Namely, Nebraska's definition of "without consent" reaches situations where the victim withholds consent—whether verbally or by conduct—and situations where consent is obtained through deception. Neb. Rev. Stat. § 28-319(1)(a); Neb. Rev. Stat. § 28-318(8)(a)(ii)–(iv). The plain language of § 2242 does not appear to reach these situations—at least absent threats, fear, or incapacitation—and some courts have concluded it does not. *See Cabrera-Gutierrez*, 756 F.3d at 1134 ("Nonconsensual intercourse with a mentally and physically capable individual not involving a threat or the use of fear might violate Or.Rev.Stat. § 163.425, but it would not violate 18 U.S.C. § 2242."); *cf. United States v. Villarreal*, No. CR 10–50082–JLV, 2012 WL 683356, at *9 (D.S.D. Mar. 2, 2012) (reasoning evidence only supported attempt under § 2242 because the defendant did

not use force and the victim was awake and unintoxicated at the time of the alleged sexual abuse),

*aff'd*, 707 F.3d 942 (8th Cir. 2013).

The Eighth Circuit has not addressed whether § 2242 prohibits all nonconsensual sex. But in summarizing the statutory elements, the Eighth Circuit has implied it does not. In *United States v. Ford*, the Eighth Circuit reviewed the defendant's kidnapping conviction, which the defendant argued was inconsistent with his acquittal at the same trial for sexual abuse under § 2242(2). 726 F.3d 1028, 1029 (8th Cir. 2013). In rejecting this argument, the court discussed the elements of § 2242(2), and suggested that nonconsensual sex, without more, does not violate the statute:

> To convict Ford on the sexual abuse count, the jury had to find all five elements of the offense beyond a reasonable doubt. Excluding the fourth and fifth elements, which concern jurisdiction, the jury might have reasonably doubted any or all of the remaining contested elements. These elements required proof that (1) "Ford ... knowingly engage[d] in or attempt [ed] to engage in a sexual act with ... Weston;" (2) either "Weston was incapable of appraising the nature of the conduct, or alternatively [that she] was physically incapable of declining participation in or communicating unwillingness to engage in the sexual act;" and (3) either "Ford knew that ... Weston was incapable of appraising the nature of the conduct, or alternatively [that he knew that she] was physically incapable of declining participation in or communicating unwillingness to engage in the sexual act." *See* 18 U.S.C. § 2242(2). *A jury finding of reasonable doubt on any one of those three elements would require acquittal.* Thus, it is entirely possible that the jury found beyond a reasonable doubt that "Ford ... knowingly engage[d] in or attempt[ed] to engage in a sexual act with ... Weston," but it still acquitted him on the sexual abuse count because it reasonably doubted whether Weston was incapacitated in some way or whether Ford knew that Weston was incapacitated.

*Id.* at 1032 (alterations in original) (emphasis added). The Eighth Circuit's conclusion that a lack of incapacitation or knowledge "would require acquittal" implies that subsection (2) of § 2242 does not criminalize nonconsensual sex absent incapacitation. Although the Eighth Circuit addressed only subsection (2), its reasoning suggests that a defendant could not be convicted under

subsection (1) absent threats or fear, even if the defendant committed a nonconsensual sex act. By contrast, Nebraska's first-degree sexual assault statute expressly prohibits sexual penetration done "without consent." *See* Neb. Rev. Stat. § 28-319(1)(a); Neb. Rev. Stat. § 28-318(8). It appears, therefore, that Nebraska's first-degree sexual assault statute criminalizes a significant category of conduct that § 2242 does not reach.

The Government resists this conclusion for several reasons, but none of its arguments explains how § 2242 can be read to encompass nonconsensual sexual acts that do not involve threats, fear, or victim incapacitation. First, the Government asserts in conclusory fashion that § 2242 is a "clear match with Nebraska's 'without consent' element of its sexual assault crime." ECF No. 34 at 6. The Government provides no analysis or support for this proposition beyond an inapposite quotation from *Bruguier*. *Id.* (quoting *Bruguier*, 735 F.3d at 762 (noting § 2422(2) covers a "victim's incapacity or inability to consent")). This argument does not address how § 2242(2) can be read to cover situations of nonconsent that do *not* involve incapacity or inability to consent—*e.g.*, nonconsent expressed through words or conduct. *See* Neb. Rev. Stat. § 28-318(8)(a)(ii)–(iii).

Next, relying on the Nebraska Supreme Court's decision in *State v. Willis*, the Government argues the Nebraska statute should be read narrowly as a "crime of violence" that requires victims to be "overcome" by threats, force, coercion, or deception. ECF No. 36 at 3 (quoting 394 N.W.2d 648, 650–51 (Neb. 1986)). But *Willis* dealt with a prior version of Nebraska's first-degree sexual assault statute, which provided in relevant part: "Any person who subjects another person to sexual penetration and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception ... is guilty of sexual assault in the first degree." 394 N.W.2d at 650 (omission in original) (internal quotation marks omitted) (quoting Neb. Rev. Stat. § 28-319(1) (Reissue 1979)). The *Willis* court's statements about § 28-319 relied on this quoted language, which is no longer

part of the statute. *See id.* In 1995, the Nebraska legislature substantially amended § 28-319. *See* 1995 Neb. Laws L.B. 371 § 4. In doing so, it deleted "overcome" and replaced the "force, threat of force, express or implied, coercion, or deception" language with "without consent." *Id.* And it added the four-part definition of "without consent" now in effect, which lists deception separately from "force or threat of force or coercion." *Id.* § 3; *State v. Koperski*, 578 N.W.2d 837, 842 (Neb. 1998) (noting the addition of "without consent" to § 28-319(1)(a)). In short, *Willis* relied on now-repealed language from § 28-319 that has no counterpart in the current statute or the version in effect when Church was charged. The Government's reliance on *Willis* is misplaced.

The Government's reliance on *State v. Orosco* is misplaced for the same reason. No. A-98-299, 1999 WL 247119 (Neb. Ct. App. Apr. 6, 1999) (unpublished). The defendant there challenged the sufficiency of the evidence supporting his conviction for first-degree sexual assault, arguing "there was no evidence that he overcame [the victims] by force, threat of force, express or implied coercion or deception." *Id.* at *4 (internal quotation marks omitted). The Nebraska Court of Appeals rejected his argument, finding "there was force, threat of force, coercion, or deception sufficient to support the convictions." *Id.* As these quotations make clear, the *Orosco* court looked to the prior version of § 28-319 discussed in *Willis*, although it was repealed years before the defendant's 1997 assaults.

In response to Church's argument that § 2242 has no analogue to Nebraska's prohibition on consent obtained through deception, the Government argues the language of § 2242(2)(A), which prohibits sexual acts with persons who are "incapable of appraising the nature of the conduct," covers the same ground as the Nebraska statute on this point. ECF No. 34 at 6; *see* Neb. Rev. Stat. § 28-318(8)(iv) (defining "without consent" to include situations where consent is obtained through "the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor"). In its sur-reply, the Government cites two cases for this argument.

ECF No. 36 at 3–4. First, it cites *State v. Collins*, where the Nebraska Court of Appeals affirmed a defendant's conviction under § 28-319(1)(b), concluding: "We believe the evidence is ample to establish that [the defendant's] manipulation and deception of [the victim] rendered her incapable of resisting or appraising the real nature of the sexual penetration that he visited upon her during the relevant time period." 583 N.W.2d 341, 352 (Neb. Ct. App. 1998). Second, it cites *United States v. Vallie*, where the Eighth Circuit reviewed a conviction under § 2242(2)(A) that involved sexual intercourse accomplished through deception. 284 F.3d 917, 919–20 (8th Cir. 2002).

*Collins* provides only marginal support for the Government's argument. Taken in isolation, the above language from *Collins* might seem to equate deception with incapacity. But *Collins* dealt only with subsection (b) of Nebraska's statute, involving incapacitation, and not the deception provision. 583 N.W.2d at 346; *compare* Neb. Rev. Stat. § 28-319(1)(b), *with* Neb. Rev. Stat. § 28-318(8)(iv). The court's use of the word "deception" was not a reference to the statute; instead, the court used the word to describe how the defendant—"a highly trained psychotherapist who specialized in treating sexually abused youth"—"used the tools and techniques of his trade to mold [two] young girls into his sexual robots." 583 N.W.2d at 352. This form of "manipulation and deception," the court held, rendered the teenage girls "incapable of resisting or appraising the real nature of the sexual penetration," as required by § 28-319(1)(b). *Id. Collins* does not discuss whether other forms of deception—*e.g.*, deceiving an unimpaired adult—equate to incapacity. And the existence of separate subsections for incapacity and deception in the Nebraska statute suggests they have independent meaning. *Compare* § 28-319(1)(b), *with* § 28-318(8)(iv).

*Vallie* provides even less support for the Government's argument. As the Government acknowledges, the *Vallie* court did not review the sufficiency of the evidence for the defendant's conviction under 18 U.S.C. § 2242(2)(A). *See* ECF No. 36 at 4. Thus, the Government cites *Vallie* simply to demonstrate that defendants have been convicted under § 2242(2)(A) for deceiving

others into sexual intercourse. *Id.* But *Vallie* does not support even that proposition. The victim in *Vallie* was assaulted after going to bed at 4:00 a.m., following a party where alcohol was served. 284 F.3d at 919. Shortly after going to sleep, she was awakened by the defendant having sex with her. *Id.* Based on this factual record, the likely basis for the defendant's conviction under § 2242(2)(A) was that the victim was asleep, intoxicated, or both, at the time of the assault. *Cf. United States v. Carter*, 410 F.3d 1017, 1027 (8th Cir. 2005) (holding victim was unable to appraise the nature of the defendant's conduct under § 2242(2)(A) because she had ingested marijuana and alcohol and felt "drowsy" and "very tired" at the time of the assault). And even if deception were the basis for the defendant's conviction, *Vallie* would still provide no support for the Government's argument because the Eighth Circuit did not address the sufficiency of the evidence, meaning it had no occasion to consider whether deception equates to incapacitation under § 2242(2)(A).

More generally, the Government's argument relies on a broad reading of the word "incapable," which lacks support in the case law. Court have generally held that § 2242(2)(A) covers mental incapacitation—*i.e.*, situations where the victim is "mentally incapable of understanding what is happening." *James*, 810 F.3d at 676; *see United States v. Walker*, No. 17-CR-184-pp, 2018 WL 3325909, at *8 (E.D. Wis. July 6, 2018); *cf. Carter*, 410 F.3d at 1027. Deception is different than mental incapacitation; persons with full capacity can be deceived. Therefore, Nebraska's prohibition on deception-induced consent covers conduct that § 2242(2)(A) does not reach.

Finally, the Government argues that, even if the statutes are not identical, they are at least "comparable." ECF No. 34 at 6; ECF No. 36 at 4. If Nebraska's prohibition on deception-based consent were the only difference between the statutes, the Government's argument might carry the day. Although the deception provision of the Nebraska statute has no precise analogue in § 2242, deception is arguably comparable to taking advantage of someone because of their lack of capacity,

or using threats or fear to induce compliance. But Nebraska's prohibition on deception-based consent is not the only divergence between the statutes. The Nebraska statute also contains a general prohibition on sexual penetration "without consent." Neb. Rev. Stat. § 28-319(1)(a). And this subsection encompasses not only deception-based consent, but also a victim's refusal to consent expressed through words or conduct. Neb. Rev. Stat. § 28-318(8)(ii)–(iii). There is no similar provision in § 2242, which singles out discrete categories of inherently nonconsensual sex—those involving threats, fear, or victim incapacitation—without including a backstop prohibition on nonconsensual sexual acts. The Government fails to acknowledge this difference between the statutes, and therefore cannot establish this discrepancy as only a minimal variation between otherwise comparable statutes. Nebraska's "without consent" provision, which has no counterpart in § 2242, distinguishes this case from cases where courts have found statutes comparable despite slight variations. *Cf. Coleman*, 681 F. App'x at 417–18 (holding element of "sexual or aggressive intent" in a Minnesota statute was comparable to element of "intent to abuse . . . or gratify the sexual desire of any person" under 18 U.S.C. § 2246(3), even though Minnesota statute may have covered a "slightly broader range of conduct"). Therefore, the Court is unable to conclude that Nebraska's first-degree sexual assault statute is "comparable" to § 2242.

      **2.**      **The Nebraska statute is not comparable to aggravated sexual abuse under 18 U.S.C. § 2241.**

The parties only briefly discuss whether Nebraska's first-degree sexual assault statute is comparable to or more severe than aggravated sexual abuse under 18 U.S.C. § 2241. The Government concedes lack of consent is not an element of § 2241, but argues the statutes are still comparable because "lack of consent remains relevant" to the analysis under § 2241. ECF No. 34 at 5 n.2. Church argues the Nebraska statute is "much broader" than § 2241 because

it requires proof of an enumerated aggravating circumstance, while the Nebraska statute does not require any aggravating circumstances. ECF No. 35 at 3 n.1.

Nebraska's first-degree sexual assault statute is not comparable to or more severe than aggravated sexual abuse under § 2241. Aggravated sexual abuse covers sexual acts accomplished through force; threats of death, serious bodily injury, or kidnapping; inducing fear of death, serious bodily injury, or kidnapping; rendering a person unconscious; or drugging a person. 18 U.S.C. § 2241. Like § 2242, § 2241 requires more than lack of consent. *See United States v. Cobenais*, 868 F.3d 731, 740 (8th Cir. 2017). Instead, the statute proscribes only discrete categories of nonconsensual sex that involve aggravating circumstances. Absent one of these aggravating circumstances, it does not prohibit nonconsensual sex. *See id.* Nebraska's first-degree sexual assault statute, by contrast, covers all nonconsensual sexual penetration, whether or not aggravating circumstances are present.

The Government's argument that § 2241 is comparable to Nebraska's first-degree sexual assault statute because "lack of consent remains relevant" to the analysis under § 2241 is unpersuasive. ECF No. 34 at 5 n.2 (citing *Cobenais*, 868 F.3d at 740). To demonstrate that § 2241 is comparable to or more severe than Nebraska's first-degree sexual assault statute, the Government must explain why Nebraska's statute does not cover more ground than § 2241. It cannot merely point to certain general similarities between the two statutes while ignoring significant differences.

The Court finds no legal basis for reading §§ 2241 or 2242 as general prohibitions on nonconsensual sex, and therefore Nebraska's first-degree sexual assault statute is not comparable to or more severe than either federal crime. As discussed above, Nebraska expanded its first-degree sexual assault statute in 1995 to include a prohibition on sexual penetration done "without consent." *See* 1995 Neb. Laws L.B. 371 § 4. In doing so, Nebraska eliminated the requirement that

a victim be "overcome" by threats, force, coercion, or deception. *Id.* Congress has not similarly amended the definitions of aggravated sexual abuse and sexual abuse contained in §§ 2241 and 2242 since it enacted them in 1986. *Compare* Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99–646, § 87, 100 Stat. 3592 (1986), *with* 18 U.S.C. §§ 2241, 2242. Both §§ 2241 and 2242 still require something beyond nonconsensual sex—such as the use of force, threats, coercion, or incapacitation. Around the time that Congress enacted §§ 2241 and 2242, some argued that the "force" required by rape and sexual assault laws should include the force inherent in nonconsensual sexual acts. *See, e.g.*, Susan Estrich, *Rape*, 95 Yale L.J. 1087, 1105–06 (1986). Some state courts later interpreted their states' sexual assault statutes in this manner. *See, e.g., State ex rel. M.T.S.*, 609 A.2d 1266, 1277 (N.J. 1992). But the Government has not advanced this interpretation of § 2241, nor has it provided any other legal basis for concluding that all nonconsensual sex is covered by the circumstances listed in §§ 2241 or 2242.

## V.    CONCLUSION

Nebraska's first-degree sexual assault statute is not comparable to or more severe than aggravated sexual abuse or sexual abuse, as those crimes are defined in 18 U.S.C. §§ 2241 and 2242. Therefore, Church does not qualify as a tier III sex offender under SORNA. *See* 34 U.S.C. § 20911(4)(A)(i). Because Church is a tier I sex offender, his duty to register under SORNA lasted fifteen years. *Id.* § 20915(a)(1). Church was released from prison on September 4, 2003. ECF No. 23-4. His alleged failure to register occurred between April 2019 and September 2019—more than fifteen years after he was released from prison. ECF No. 2. Because the indictment does not allege a criminal offense, it must be dismissed.

**IT IS ORDERED** that Defendant Scott Lowell Church's Motion to Dismiss, ECF No. 23, is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 4th day of February 2020.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE